PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

v.

MICHAEL DEFONTE BERNARD,

       *Defendant-Appellant.*

No. 11-4054

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(7:09-cr-00050-F-1)

Argued: December 6, 2012

Decided: February 28, 2013

Before SHEDD, DIAZ, and THACKER, Circuit Judges.

_____

Affirmed by published opinion. Judge Thacker wrote the majority opinion, in which Judge Shedd joined. Judge Diaz wrote a dissenting opinion.

_____

## COUNSEL

**ARGUED:** Juan A. Arteaga, SIMPSON THACHER & BARTLETT, LLP, New York, New York, for Appellant. Yvonne Victoria Watford-McKinney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina,

for Appellee. **ON BRIEF:** William T. Russell, Jr., Jeffrey E. Baldwin, SIMPSON THACHER & BARTLETT, LLP, New York, New York, for Appellant. Thomas G. Walker, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

THACKER, Circuit Judge:

Michael Defonte Bernard ("Appellant") appeals the district court's decision allowing him to represent himself at trial despite his questionable mental capacity. Appellant contends that the Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164 (2008), established the broad legal principle that once a borderline competent defendant seeks to represent himself at trial, the district court *must* conduct an additional inquiry and hold the defendant to a higher standard of competency than that required to stand trial. But *Edwards* addressed only the question of whether the Constitution *permits* a court to *force* counsel on a criminal defendant who, although mentally ill, is nonetheless competent to stand trial. *Id.* at 177-78.

Here, however, the district court granted Appellant's request to represent himself. As such, this case is more akin to *Godinez v. Moran*, 509 U.S. 389 (1993), which held, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* at 399 (emphasis in original). Because we reject Appellant's interpretation of *Edwards* and are satisfied that the district court applied the correct legal standard, we affirm.

## I.

## A.

Appellant has a long history of mental illness. Emotionally and physically abused as a child, Appellant has suffered for many years from severe depression and mental illness, including chronic schizophrenia and paranoia. He has attempted suicide at least three times and has been involuntarily committed to mental health institutions on at least four separate occasions. On many of these occasions, Appellant was found to be abusing cocaine and marijuana to cope with his mental illness.

On April 22, 2009, the grand jury returned an indictment charging Appellant with, among other things, possessing with the intent to distribute and conspiring to possess with the intent to distribute 50 kilograms or more of marijuana, and possessing a firearm in furtherance of a drug trafficking offense. After concerns were raised respecting Appellant's mental condition, the district court ordered that he be evaluated. A government psychologist recommended Appellant be found incompetent to stand trial because of his schizophrenia, paranoid delusions, and disorganized thought processes. On October 7, 2009, the district court held a competency hearing during which it found Appellant incompetent and ordered him to receive treatment.

In a report dated March 22, 2010, a second government psychologist recommended Appellant be found competent to stand trial because the antipsychotic, antidepressant, and antianxiety medication Appellant was taking enabled him to sufficiently understand the judicial proceedings against him and to assist his counsel.

On June 4, 2010, the district court held a second competency hearing wherein it addressed Appellant's competency to stand trial and defense counsel's motion to withdraw, which

was based on Appellant's request to proceed pro se.[1] After defense counsel told the district court, "we do not oppose a finding that [Appellant] is competent to stand trial," defense counsel addressed Appellant's request to represent himself as follows:

> There's a case called *United States v. Morano*, M-O-R-A-N-O, which says that if they—the court uses the same standard in determining whether a defendant is competent to waive assigned counsel.
>
> And since that standard has been met, I believe that you could find that he is competent to waive counsel. And he does have a motion that he wants to bring to the court's attention, that he wants to appear pro se and have me assigned as standby counsel.
>
> Judge, I have warned him about it, but that's his feeling. He feels very strongly about it, and I've not been able to educate him or advise him that I don't think it's in his—actually in his total best interest. And so that's the motion that he wants the court to hear today.

J.A. 62-63.[2] The district court thereafter engaged in colloquy with Appellant concerning Appellant's request to waive counsel.[3] The court granted defense counsel's motion to withdraw

---

[1]Although the psychologist who conducted the second evaluation of Appellant and found him competent to stand trial was aware of Appellant's expressed desire to represent himself, she did not specifically opine on his competency to waive his right to counsel and represent himself.

[2]Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

[3]Appellant points to one statement in particular from this colloquy that he now says demonstrates his clear incompetence. During his second competency hearing, Appellant told the district court, "I can have a field day with these boys [prosecutors] in court." J.A. 73.

and granted Appellant's request to waive counsel, though Appellant consented to retaining standby counsel.

The district court subsequently held a bench conference with counsel for the Government and defense counsel to discuss Appellant's competency going forward. The court told counsel, "I'm frank to say that I'm not real comfortable with this." J.A. 82. Regarding Appellant's competency to stand trial, the district court further recognized, "the situation today may not be the same tomorrow. . . . It's sort of a fluid situation." *Id.* at 84. The court elaborated,

> I mean, you know, competency or the question of insanity has a temporal quality. It has a qualitative aspect and a quantitative aspect. Some people can be perfectly rationale [sic]. . . . And as of this moment, I'm satisfied, but I cannot tell you that I will be at any time in the future. . . . It's temporal, but also this sort of thing can vary from shades of white to black and go through a lot of degrees of gray. . . . And that's something that you can't make a firm evaluation—a firm and permanent evaluation of that is engraved in stone.

*Id.* at 85-86.

In this posture, the case proceeded to trial. During trial, Appellant was, among other things, able to make opening and closing statements, testify, and have his case re-opened in order to conduct an examination of a law enforcement officer who he had previously declined to cross-examine during the Government's case-in-chief. Yet, Appellant made no objections during the Government's case-in-chief, and failed to question two of the witnesses or call witnesses on his own behalf.

Ultimately, the jury deliberated for 12 minutes before finding Appellant guilty on all charges. On October 6, 2010, the

district court convened a sentencing hearing, during which Appellant was fully represented by his former standby counsel.[4] However, the court was quickly forced to continue the proceeding after it became clear that Appellant's mental condition was wholly compromised at that time.[5] At the reconvened sentencing hearing, held on January 5, 2011, the district court sentenced Appellant to 180 months imprisonment.[6] He now appeals.

## B.

Appellant raises two principal issues on appeal. First, he argues the district court erred when it allowed him to exercise his right to self-representation at trial. He claims the court wrongly conflated the legal standards for assessing his competency to stand trial and his competency to represent himself at trial, the latter of which he alleges is more rigorous following *Edwards*. In this vein, Appellant also maintains the district court abused its discretion by failing, during trial, to sua sponte reconsider its findings that Appellant was competent to stand trial and waive counsel. Second, Appellant contends his trial counsel rendered ineffective assistance by incorrectly arguing that Appellant's competence to waive counsel at trial was governed by the same standard as his competence to stand trial.

---

[4]The record does not indicate whether the district court had by this time appointed his former standby counsel as counsel (over Appellant's wishes) or whether Appellant himself made the decision. *See* J.A. 358-60; 368-85 (arguments of defense counsel at sentencing hearing).

[5]A review of the record of the hearing indicates that Appellant consistently spoke out of turn, was unresponsive to the court and counsel, used profanities and racial slurs, and threw the Bible when asked to swear the oath. *See* J.A. 355-367.

[6]Appellant's former standby counsel represented him in full at the second hearing as well. Again, the record is not clear whether the district court forced counsel on Appellant during this proceeding or whether Appellant himself made the decision to proceed with counsel.

## II.

Because Appellant presents these arguments for the first time on appeal, we review for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1993). To establish plain error, Appellant must show that the district court erred, that the error was plain, and that it affected his substantial rights. *Id.* at 734. With regard to the third element of that standard, Appellant must show that the alleged error actually "affected the outcome of the district court proceedings." *Id.*[7]

---

[7]Our dissenting colleague rejects the application of plain error review, concluding, "when a defendant requests to proceed pro se at a competency hearing, he has sufficiently put his competency at issue to preserve a claim of invalid waiver of counsel." *Post* at 21-22. Regardless of the merits of this view, we need not reach it in light of the facts here. In this case, far from leaving Bernard to his own devices during the *Faretta* proceedings, defense counsel initiated and actively participated in the discussion with the court regarding Bernard's request to represent himself and his own corresponding motion to withdraw. *See* J.A. 62-64, 75, 79, 82-86. And as the dissenting opinion correctly notes, Bernard's counsel failed to object to the court's decision or make mention of *Edwards* during the proceedings. For us, this ends the matter and commands plain error review.

But our good colleague claims that because defense counsel's motion to withdraw was pending at the time the court found Bernard competent to waive counsel, "[f]or all practical purposes then, it was Bernard who was making the operative decisions at the competency hearings." *Post* at 22 n.3. We disagree. In our view, defense counsel continued as Bernard's counsel of record until the district court granted the defendant's request to represent himself and appoint defense counsel as standby counsel, a ruling that occurred late in the hearing. *See* J.A. 82. Indeed, the record indicates no decision on defense counsel's motion to withdraw until that moment. Accordingly, we look to not only the defendant, but to his counsel, who for much of the hearing actively participated with full representational authority. The dissent concedes that defense counsel "bears substantial responsibility" for allowing the alleged error to pass without objection. We agree and conclude that, at a minimum, his failure to preserve the claim of invalid waiver warrants plain error review.

## III.

## A.

We begin with the fundamental tenet that a criminal defendant has a Sixth Amendment right to self-representation. *See Faretta v. California*, 422 U.S. 806, 819, 821 (1975). Such a person may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely. *See United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000) (collecting cases). Even so, "the *Faretta* right to self-representation is not absolute, and 'the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.'" *Id.* at 559 (quoting *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 162 (2000)).

The Supreme Court first addressed the issue of competency to waive counsel in *Godinez v. Moran*, 509 U.S. 389 (1993). In that case, the defendant pleaded guilty in Nevada state court to three counts of first-degree murder. *Id.* at 391. After he was found competent to stand trial, the defendant sought to discharge his attorneys and enter guilty pleas. *Id.* at 392. The trial court found that the defendant had waived counsel. *Id.* at 393. The court then sentenced him to death on all three counts, and two were affirmed on appeal. *Id.* In federal habeas proceedings, however, the Ninth Circuit concluded that competency to waive constitutional rights requires a higher level of mental functioning than that required to stand trial. *Id.* at 394. The Supreme Court disagreed, rejecting "the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from)" the trial competency standard. *Id.* at 398. It concluded, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* at 399 (emphasis in original).

*Edwards* did not alter this holding. There, the Supreme Court elaborated on the parameters of *Godinez.* As in this case, Edwards sought to waive counsel and exercise his right of self-representation; however, in contrast to the present case, the Indiana trial court found the defendant competent to stand trial but not competent to waive counsel. *See Edwards*, 554 U.S. at 167-69. The defendant proceeded with the assistance of counsel, and the jury convicted him. *Id.* at 169. The Indiana Supreme Court reversed the convictions, reasoning that *Godinez* required the state trial court to allow the defendant to represent himself. *Id.* Indiana petitioned for a writ of certiorari, which the Supreme Court granted to address "whether the Constitution *permits* a State to limit [a] defendant's self-representation right by insisting upon representation at trial-on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* (emphasis supplied). The Court concluded that states indeed have that right. *Id.* at 174.[8]

*Edwards* first explained that *Godinez* addressed only the level of competency required to waive the right to counsel when the defendant intends to enter a guilty plea and, accordingly, that a different standard may be used when the defendant asserts his right to self-representation to defend himself at trial. *See id.* at 172-73. The Court also emphasized that *Godinez* involved a state trial court that had *permitted* the defendant to represent himself, whereas in the case at hand, a state trial court *denied* the defendant that right. *Id.*

Thus, the Court reiterated that under *Godinez*, it is constitutional for a state to allow a defendant to conduct trial proceed-

---

[8]The Seventh Circuit has observed that while *Edwards* expressly dealt with a state court proceeding, its rule applies to federal courts with equal force. *See United States v. Berry*, 565 F.3d 385, 291-92 (7th Cir. 2009) (explaining that if both state and federal courts are bound to uphold the right to a fair trial and the right to self-representation, it follows that *Edwards* applies to federal courts equally); *United States v. Ferguson*, 560 F.3d 1060, 1067 n.3 (9th Cir. 2009) (same).

ings on his own behalf when he has been found competent to stand trial. *Id.* On the other hand, the state may insist on counsel and deny the right of self-representation for defendants who are "competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* at 178.

*Edwards* did not adopt a specific standard in this regard, but instead recognized that the trial court is often in the best position to make individualized assessments of mental competency. *Id*. at 177. Thus, after *Edwards*, at least one relevant consideration for a district court in determining whether or not to force counsel on a mentally ill defendant is whether a defendant who is otherwise able to satisfy the competence standard may nevertheless be "unable to carry out the basic tasks needed to present his own defense without the help of counsel." *Id*. at 175-76. *See Dusky v. United States*, 362 U.S. 402, 402 (1960).[9]

But that is not the situation in this case: as in *Godinez*, here, the district court granted Appellant's request to waive his right to counsel. To the extent Appellant suggests the district court was constitutionally compelled to deny him the right, *Edwards* announces no such rule. By its plain terms, *Edwards* held only, "the Constitution *permits* States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves." *Id.* (emphasis supplied). This language is permissive rather than a pronouncement of a requirement in these circumstances. Thus, while the district court was not

---

[9]*Dusky* provides the test for mental competence, which asks whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* at 402.

compelled to find Appellant competent to waive his right to counsel simply because the court had found him competent to stand trial, it does not follow that the district court was barred from doing so.[10] To the contrary, *Edwards* itself reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial. *See id.* at 173 ("For another thing, *Godinez* involved a State that sought to *permit* a gray-area defendant to represent himself. *Godinez*'s constitutional holding is that a State may do so. But that holding simply does not tell a State whether it may *deny* a gray-area defendant the right to represent himself—the matter at issue here." (emphases in original)). Appellant conceded at oral argument that no court has read *Edwards* differently.[11]

At bottom, *Edwards* does not stand for the proposition that a state *must* deny the right of self-representation to a defendant of questionable mental competence or that district courts must conduct an additional "*Edwards*" inquiry into the competency of every defendant who requests to proceed pro se. It is therefore permissible for a trial court, having found a mentally ill defendant competent to stand trial, to determine him

---

[10]We reached this same conclusion in a recent unpublished decision. *See United States v. Wiggins*, No. 11-5125, 2012 WL 3291733 (4th Cir. Aug. 14, 2012) (unpublished) ("[W]e decline to transform *Edwards*'s permissive holding into the rigid edict that Wiggins requests.").

[11]Indeed, as we do here, several circuits have interpreted *Edwards* to confer discretion, not to impose a new duty. *See United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir. 2009); *United States v. Turner*, 644 F.3d 713, 724 (8th Cir. 2011) ("*Edwards* clarified that district court judges have discretion to force counsel upon the discrete set of defendants competent to stand trial but incompetent to represent themselves. It does not mandate two separate competency findings for every defendant who seeks to proceed pro se." (citation omitted)); *Berry*, 565 F.3d at 391 ("The Constitution may have allowed the trial judge to block his request to go it alone, but it certainly didn't require it." (emphasis omitted)); *United States v. Posadas-Aguilera*, 336 F. App'x 970, 975-76 n.5 (11th Cir. 2009) (same); *United States v. VanHoesen*, 450 F. App'x 57, 61 (2d Cir. 2011) (recognizing the same without deciding).

to be competent to waive his Sixth Amendment right to counsel.

B.

Turning to the particular facts before us, we first recognize that the district court "will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Edwards*, 554 U.S. at 177.

In the present case, the district court was keenly aware of Appellant's mental condition, having committed him for evaluation and subsequent treatment, held two competency hearings to determine his competency to stand trial, engaged him in colloquy to determine his competency to waive counsel, and presided over his trial. In determining Appellant's competency to waive his right to counsel, the district court asked Appellant if he understood that the medical staff had found him competent to stand trial and to assist his attorney, if he wanted to represent himself, and if he wanted defense counsel to act as standby counsel. Appellant answered in the affirmative to each of these questions, and the district court was in the best position to observe his demeanor and make judgments about his mental abilities.

Appellant claims that his severe mental illness was demonstrated when he told the district court that he could "have a field day with these boys [prosecutors] in court." J.A. 73. However, defendants who choose to represent themselves often do so because they believe they are more capable than trained attorneys to conduct their own defense. *See United States v. Ladoucer*, 573 F.3d 628, 633 (8th Cir. 2009) ("[A] court is not required to ensure the defendant is capable of representing himself as well as a trained and experienced lawyer, only that he understands the risks involved in representing himself and that he has knowingly and intelligently chosen self-representation." (internal quotation marks omitted)).

Here, the district court informed Appellant of the risks involved in self-representation and urged him multiple times not to represent himself. For instance, the district court advised Appellant that he "would be far better defended by a trained lawyer than [he could] be by [himself]" and asked if he still desired to represent himself "in light of all the difficulties of representing [himself] and in light of the penalties that [he] might suffer." J.A. 81. The district court subsequently found Appellant had knowingly waived his right to counsel.

Appellant also asserts that the district court's reservations respecting its decision not to force counsel on Appellant counseled against permitting him to represent himself. This may be so, but like the district court, we must take a wide view of the proceedings and Appellant's condition at the time. *See Beck v. Angelone*, 261 F.3d 377, 391 (4th Cir. 2001). Indeed, it appears from the record that a reason the district court was not comfortable with Appellant's self-representation was because, among other reasons, "competency or the question of insanity has a qualitative aspect and a quantitative aspect." J.A. 85. Nonetheless, the district court was satisfied "as of this moment" that Appellant was competent, indicating that it would be particularly attentive to any change in Appellant's condition. *Id.*[12]

The district court's satisfaction as to Appellant's competence to waive counsel and represent himself was justified throughout the trial because Appellant was able to make opening and closing statements, testify, and have his case reopened to conduct an examination of a law enforcement offi-

---

[12]The district court appropriately recognized the temporal aspect to the issue of competency. *See Drope v. Missouri*, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."); *Beck*, 261 F.3d at 387 ("Even if a petitioner is mentally competent at the beginning of the trial, the trial court must continually be alert for changes which would suggest that he is no longer competent.").

cer. The district court remained alert to Appellant's behavior, and, in fact, when the court observed at the first sentencing hearing that Appellant's mental functioning had become compromised, it committed Appellant for evaluation and treatment and rescheduled the sentencing hearing, and heard arguments at sentencing from Appellant's former standby counsel. In light of these circumstances and the record as a whole, we find no error.

Even so, Appellant argues that we should reverse because the district court was, in his view, unaware of the *Edwards* decision. It is true that *Edwards* was never referenced during any of the proceedings below. In particular, Appellant draws our attention to defense counsel's statements during Appellant's second competency hearing, during which defense counsel stated to the court as follows:

> There's a case called *United States v. Morano*, M-O-R-A-N-O, which says that if they — the court uses the same standard in determining whether a defendant is competent to waive assigned counsel.

> And since that standard has been met, I believe that you could find that he is competent to waive counsel. And he does have a motion that he wants to bring to the court's attention, that he wants to appear pro se and have me assigned as standby counsel.

J.A. 62-63.[13] The district court did not respond to defense counsel's statements or immediately thereafter engage the lawyers concerning whether the standard for mental competency to waive the right to counsel was different than that required to stand trial. In any event, Appellant's contention that we should reverse because the district court did not specifically mention or discuss *Edwards* is of no moment

---

[13]While it is not clear from the record, defense counsel was likely referring to *Godinez v. Moran*, 509 U.S. 389 (1993).

because, as explained above, Appellant is simply wrong as to the import of that case to the facts we face here. *Edwards* does not *require* district courts to impose an additional standard of competency when a defendant found competent to stand trial seeks to waive his right to counsel. It only *permits* them to do so.

Based on the foregoing, we conclude the district court did not err, let alone plainly err, in finding Appellant competent to waive his right to counsel.

### C.

Turning to the district court's decisions during trial, Appellant claims the court was required to sua sponte reconsider its decision that Appellant was competent to stand trial and waive counsel. We review for plain error.

Title 18, United States Code, Section 4241(a) provides that the district court shall conduct a competency hearing and/or order the defendant to undergo a psychiatric evaluation "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent . . . ." 18 U.S.C. § 4241(a). Whether "reasonable cause" exists is a question left to the sound discretion of the district court. *See United States v. Mason*, 52 F.3d 1286, 1289 (4th Cir. 1995). Reasonable cause may be established through "evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." *Id.* at 1290. Notably, "the presence of some degree of mental illness is not to be equated with incompetence. . . ." *Hall v. United States*, 410 F.2d 653, 658 (4th Cir. 1969); *see also United States v. Taylor*, 437 F.2d 371, 375-76 (4th Cir. 1971). Rather, as noted, the legal test for competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has

a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402.

In this case, we cannot say Appellant's behavior during his trial called into question the district court's decisionmaking concerning Appellant's competency to stand trial and waive counsel. Appellant's failure to object during the Government's case-in-chief, question two of the witnesses, call witnesses on his own behalf, or otherwise "think like a lawyer" did not render him mentally incompetent. *See United States v. Ahrendt*, 560 F.3d 69, 74 (1st Cir. 2009); *see also Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000) ("Likewise, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial."). In fact, Appellant's mental state did not show marked decline until the sentencing hearing on October 6, 2010.

While Appellant did act in ways that may arguably appear bizarre or irrational, such behavior does not invariably compel a finding of incompetency. *See id.* The district court was in the best position to observe Appellant and its determinations during trial are entitled to deference, especially where, as here, the district court was acutely alert throughout trial to Appellant's condition.

Ultimately, because district courts are in the best position to make competency determinations, which at bottom rely not only on a defendant's behavioral history and relevant medical opinions, but also on the district court's first-hand interactions with, and observations of, the defendant and the attorneys at bar, we appropriately afford them wide latitude. *See Edwards*, 554 U.S. at 177; *Mason*, 52 F.3d at 1289; *United States v. Banks*, 482 F.3d 733, 743 (4th Cir. 2007) ("We defer so to the district court because it is in a superior position to adjudge the presence of indicia of incompetency. . . ."). After thorough consideration of the proceedings below, we are satisfied that the district court did not abuse its discretion in these matters.

D.

Finally, we address whether trial counsel rendered ineffective assistance by arguing that Appellant's competence to represent himself at trial was governed by the same standard governing his competence to stand trial. We review de novo a criminal defendant's claim that his Sixth Amendment right to effective assistance of counsel was violated. *See United States v. Tucker*, 603 F.3d 260, 262 (4th Cir. 2010). We may address this contention on direct appeal only if the lawyer's ineffectiveness conclusively appears from the record. *See United States v. Baldovinos*, 434 F.3d 233, 239 (4th Cir. 2006).

As we have explained, *Edwards* by its terms is not directly implicated in this case. Accordingly, the heightened standard discussed in *Edwards*, which applies when the district court considers whether to force counsel on a severely mentally ill defendant competent to stand trial but who wishes to represent himself, does not control. Even if we were to read *Edwards* as Appellant does—and as no other circuit has done—defense counsel's alleged ineffectiveness does not conclusively appear from the record. Indeed, there is no indication that the district court credited defense counsel's allegedly flawed argument. Appellant's claim of error in this regard thus fails.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

DIAZ, Circuit Judge, dissenting:

I agree with my colleagues that *Indiana v. Edwards*, 554 U.S. 164 (2008) imparts discretion, not a duty, allowing dis-

trict courts to apply a higher mental competency standard when deciding whether a defendant may waive his right to counsel. But the district court here simply was unaware of that discretion when it considered whether Bernard—who had a history of severe mental illness—should be allowed to proceed pro se. The majority nevertheless disclaims any error because *Edwards* permits a court to choose to apply the same competency standard to pro se defendants. But there can be no greater abuse of discretion than to reach a permissible result believing it to be mandatory, for that is not an act of discretion at all.

I respectfully dissent.[1]

## I.

It is undisputed that Bernard has an extensive history of paranoid schizophrenia and depression, and that a psychologist certified that medical treatment—consisting of antipsychotic, antianxiety, and antidepressant drugs—restored his mental competency in the spring of 2010. But as the majority observes in passing, this mental health evaluation found Bernard competent to stand trial, not conduct one. Even then, the evaluation did so with qualification. It conveyed doubts that Bernard's mental competency would persist, suggesting that his "history of noncompliance with prescribed treatment [would] almost certainly be a problem in the future." J.A. 468. The psychologist also limited her recommendation to Bernard's ability "to assist his attorney in his own defense if he chooses to do so." J.A. 468.

Before the second competency hearing in this case, Bernard moved to proceed pro se, while defense counsel moved to withdraw from the case. Addressing Bernard's competence to proceed pro se, counsel said the following to the district court:

---

[1]Because I would reverse the judgment on this basis alone, I do not discuss the other issues raised by Bernard's appeal.

> There's a case called *United States v. Morano*, . . . which says that if they—the court uses the same standard in determining whether a defendant is competent to waive assigned counsel.
>
> And since that standard has been met, I believe that you could find that he is competent to waive counsel. And he does have a motion that he wants to bring to the court's attention, that he wants to appear pro se and have me assigned as standby counsel.

J.A. 63. While it is unclear, counsel appeared to be referring to *Godinez v. Moran*, 509 U.S. 389 (1993), which held that the same competency standard to stand trial governs when a district court considers whether a defendant may represent himself. After *Edwards*, however, it is now clear that courts may apply a higher standard of competency to "gray area" defendants seeking to waive their right to counsel. 554 U.S. at 172, 175. At Bernard's arraignment approximately one month later, counsel again misstated the law on this issue. J.A. 105.

The district court accepted counsel's incorrect statement of the law and proceeded towards arraignment under the assumption that Bernard was competent to waive counsel and represent himself because he was competent to stand trial. Other than summarily concluding that Bernard had knowingly waived his right to counsel and that he would therefore be permitted to proceed pro se, the court did not reach an independent determination of Bernard's competency to do so, stating only: "Well, I find him competent *to stand trial*." J.A. 82 (emphasis added). But even after granting Bernard's motion, and relegating Bernard's former lawyer to standby counsel, the district court expressed doubt about Bernard's competency to represent himself, stating, "I'm frank to say that I'm not real comfortable with this." J.A. 82. Standby counsel expressed similar concern, telling the district court, "I'm just

really worried about him, whether he's really competent to waive the attorney issue." J.A. 83.

These concerns proved prescient given Bernard's performance during the trial. To put it charitably, Bernard did not manage his pro se defense well. He rambled during open and closing statements, and offered self-inculpatory explanations for his behavior on the night of November 5, 2007. Bernard cast himself as an undercover agent for the Brunswick County police, explaining that his criminal conduct was an elaborate ploy to attract police attention to the real drug traffickers that were present in the neighborhood. As one might have expected, the jury convicted Bernard.

## II.

The majority, without discussion, applies plain error review to the question of whether Bernard should have been allowed to represent himself, despite the fact that for Bernard to have preserved the issue in the manner the majority expects, he would have had to (1) recognize his own mental infirmities, and (2) object to his own motion to proceed pro se.

Whether to apply plain error review in this context is an open question for this court, and our sister circuits have given different answers. *Compare United States v. DeShazer*, 554 F.3d 1281, 1288 (10th Cir. 2009) (applying plain error review to challenge to pro se competency), *and United States v. Van-Hoesen*, 450 F. App'x 57, 61 (2d Cir. 2011) (unpublished) (same), *with United States v. McBride*, 362 F.3d 360, 365-66 (6th Cir. 2004) (noting the open question of whether plain error or de novo review applies to challenges to a *Faretta* waiver), *and United States v. Erskine*, 355 F.3d 1161, 1166 (9th Cir. 2004) (applying de novo review to challenges to *Faretta* waiver).

Plain error review applies only when a defendant fails to preserve his argument through a "contemporaneous objec-

tion." *See* Fed. R. Crim. P. 51(b); *United States v. Smith*, 640 F.3d 580, 586 (4th Cir.), *cert. denied*, 132 S. Ct. 430 (2011). Rule 51(b) provides: "If a party does not have an opportunity to object to a ruling or order, the absence of an objection does not later prejudice that party." We have noted that the Federal Rules do not take a "formulaic approach" to the contemporaneous objection rule, *see United States v. Lynn*, 592 F.3d 572, 577 (4th Cir. 2010), and other courts have declined a rigid application of the rule as well, *see United States v. Gapinski*, 561 F.3d 467, 473-74 (6th Cir. 2009); *Erskine*, 355 F.3d at 1166.

In *Erskine*, a defendant misinformed of the statutory maximum penalty at his *Faretta*[2] colloquy challenged the validity of his waiver of counsel. The Ninth Circuit refused to apply plain error despite Erskine's failure to object to the oversight by the district court, reasoning that such review

> is inapposite where a defendant has not yet been adequately informed of all the elements that he must take into account in making his decision to forgo counsel and where the error in question involves the failure to provide him with that information. Our requirements for reviewing the validity of a *Faretta* waiver are predicated on the fact that we do not expect pro se defendants to know the perils of self-representation, and consequently, we cannot expect defendants to recognize that they have not been correctly and fully advised, let alone to point out the court's errors.

*Erskine*, 355 F.3d at 1166.

I find *Erskine* analogous to the situation at hand, and would therefore hold that when a defendant requests to proceed pro

---

[2]*Faretta v. California*, 422 U.S. 806 (1975).

se at a competency hearing,[3] he has sufficiently put his competency at issue to preserve a claim of invalid waiver of counsel. In this special situation, it is paradoxical to expect a defendant to recognize his own "gray area" mental competency, and then object to his own motion to proceed pro se.

Because I agree with the majority that *Edwards* is properly read as conferring discretion rather than imposing a mandate, this court should review the district court's decision not to apply a higher pro se competency standard for abuse of discretion. *See United States v. Johnson*, 610 F.3d 1138, 1145 (9th Cir. 2010) ("Because *Edwards* holds that the Constitution 'permits' interfering with a *Faretta* request for 'gray area' defendants, it suggests an abuse of discretion standard."); *United States v. Berry*, 565 F.3d 385, 389 (7th Cir. 2009) (reviewing decision of whether "the court should not have allowed Berry to represent himself . . . for an abuse of discretion.").

III.

A.

There are two relevant mental competency standards that a district court may apply to a defendant seeking to represent himself. First, a court may apply the competency standard for a defendant to stand trial under *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam), which asks whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Second, a court may

---

[3]It is true that Bernard's counsel also failed to object and, in fact, bears substantial responsibility for the error. By this point in the proceedings, however, counsel had moved to withdraw in light of Bernard's motion to proceed pro se. For all practical purposes then, it was Bernard who was making the operative decisions at the competency hearing.

apply a distinct competency standard for self-representation recognized by *Edwards*, 554 U.S. at 173-76, which allows a district court to apply an undefined, higher standard to "gray area" defendants who may be competent to stand trial but not conduct one.

The district court believed that it was compelled, presumably under *Godinez*, to apply the *Dusky* competency standard to defendants seeking self-representation. This exact issue was presented in *VanHoesen*, where a defendant challenged his waiver of counsel on the basis "that the district court was unaware of *Edwards* and mistakenly believed that it lacked discretion to prevent VanHoesen from representing himself." 450 F. App'x at 61. The Second Circuit concluded there was no error, but only in light of "the district court's awareness that a defendant's competence to represent himself may be different from his competence to stand trial." *Id.* at 62. The decision depended not on whether *Edwards* permitted or required a different competency standard, but rather whether "the district court was oblivious to the *Edwards* distinction." *Id.* at 62 n.1.

Unlike *VanHoesen*, however, here the record supports the view that the district court was misled by counsel's misstatement of the applicable law and was otherwise unaware of *Edwards*. As a result, the majority is incorrect to find no error in this case simply because the district court reached, in the majority's estimation, a permissible result applying the wrong law. This result-oriented approach is inappropriate when reviewing a decision that is—as the majority acknowledges—discretionary.[4] *See Kickapoo Tribe of Indians of the Kickapoo Reserv. in Kan. v. Babbitt*, 43 F.3d 1491, 1497

---

[4]Of course, we frequently apply an outcome-centric analysis when determining whether an abuse of discretion prejudices a defendant. But as I explain later, that analysis is misplaced here, given my view that the error in question—an invalid waiver of counsel—is a structural defect defying any consideration of prejudice.

(D.C. Cir. 1995) ("The exercise of discretion contemplates reasoned decision making on the basis of relevant and appropriate considerations to the task at hand.").

It is well established, irrespective of the result that a court reaches, that "[w]hen a court misapprehends or fails to apply the law with respect to underlying issues, it abuses its discretion." *Gunnells v. Healthplan Servs. Inc.*, 348 F.3d 417, 446 (4th Cir. 2003); *see also United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005) ("An abuse of discretion can occur where the district court applies the wrong law . . . ."). And it should go without saying that a court manifestly abuses its discretion when it does not even realize it has any. *See United States v. Roberson*, 517 F.3d 990, 995 (8th Cir. 2008) ("[A] district court that is aware of an argument does not abuse its discretion by not considering it. When a district court does not consider an argument because it is unaware of its power to do so, however, a remand is appropriate.").

We routinely apply these principles in the context of sentencing, where we have found an abuse of discretion when a court "did not understand that it had discretion to depart from the Guidelines." *United States v. Herder*, 594 F.3d 352, 363 (4th Cir. 2010); *see also United States v. Brewer*, 520 F.3d 367, 371 (4th Cir. 2008) ("We lack the authority to review a sentencing court's denial of a downward departure unless the court failed to understand its authority to do so.").

The majority insists that we must "interpret[ ] *Edwards* to confer discretion, not to impose a new duty." Maj. Op. at 11 n.11. True enough in the abstract, but to grant a court discretion to choose either competency standard "A" or competency standard "B" means just that—a court has a *choice*. Here the district court did not *choose* to apply the same competency standard to pro se defendants. Rather, it felt constrained by its own mistaken understanding of the law to grant Bernard's request to represent himself, despite (1) its own misgivings about the wisdom of that choice, and (2) ample evidence that

would have supported a contrary decision under *Edwards*. I cannot defer to the district court's discretion here because the court did not, as a subjective matter, believe it had any. *See Herder*, 594 F.3d at 363. I would instead find that the district court abused its discretion and proceed to consider the remedy.

B.

In my view, the district court's abuse of discretion under *Edwards* resulted in an invalid *Faretta* waiver, and as a result, violated Bernard's Sixth Amendment right to counsel. *See Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004) (characterizing an invalid waiver of counsel as a violation of the Sixth Amendment right to counsel). Assessing the effect of this error is, I believe, inappropriate, because a defective *Faretta* waiver is per se prejudicial. *See United States v. Venable*, 373 F. App'x 402, 402 (4th Cir. 2010) (unpublished) (reversing and remanding an invalid waiver of counsel without assessing prejudice).

This is because an invalid waiver of counsel is tantamount to the complete deprivation of counsel, which the Supreme Court has recognized as structural error. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 (2006) ("Such [structural] errors include denial of counsel . . . ." (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963))). This analogy derives from *Penson v. Ohio*, 488 U.S. 75 (1988), where counsel representing a petitioner on appeal for state court criminal convictions moved to withdraw on the basis that the appeal was meritless. The state appellate court granted the motion, denied petitioner's motion to substitute new counsel, and "without the assistance of any advocacy for petitioner . . . made its own examination of the record to determine whether petitioner received a fair trial and whether any grave or prejudicial errors occurred therein." *Id.* at 79 (internal quotations omitted).

Because there were meritorious issues for appeal, the Supreme Court concluded that the state appellate court ran afoul of *Anders v. California*, 386 U.S. 738 (1967). More importantly, the Court presumed prejudice on the basis that "the denial of counsel in this case left petitioner completely without representation during the appellate court's actual decisional process. This is quite different from a case in which it is claimed that counsel's performance was ineffective." *Penson*, 488 U.S. at 88.

Our sister circuits have treated defective *Faretta* waivers as structural Sixth Amendment errors not amenable to any prejudice inquiry. *See United States v. Forrester*, 512 F.3d 500, 508 (9th Cir. 2008) ("The failure to meet the requirements for a valid *Faretta* waiver constitutes per se prejudicial error, and the harmless error standard is inapplicable." (internal quotations omitted)); *United States v. Virgil*, 444 F.3d 447, 456 (5th Cir. 2006) ("[We] hold now, as our sister circuits have, that this type of *Faretta* error at *trial* is insusceptible to harmless error analysis . . . ."); *United States v. Salemo*, 61 F.3d 214, 221 (3d Cir. 1995) ("[W]e decline to engage in a harmless error analysis [where defendant did not validly waive counsel]."), *overruled on other grounds by United States v. Turner*, 677 F.3d 570 (3d Cir. 2012); *United States v. Allen*, 895 F.2d 1577, 1580 (10th Cir. 1990) ("Acceptance of an invalid waiver in violation of a defendant's Sixth Amendment rights necessarily leaves him entirely without the assistance of counsel at trial." (internal quotations omitted)).[5]

In the same way, when a district court does not comprehend the full measure of its discretion under *Edwards* to safeguard a mentally ill defendant's right to counsel, I would hold

---

[5]The fact that Bernard enjoyed standby counsel does not cure the error. *See Salemo*, 61 F.3d at 222 ("[W]e do not believe that the district court's instruction for Salemo's appointed counsel to serve as standby counsel during the sentencing is a sufficient substitute for obtaining a valid waiver of the right to counsel from the defendant.").

that the error is tantamount to a defective waiver of that right, which we should not test for prejudice. Instead, I would reverse the judgment and remand for a new trial.

I respectfully dissent.