**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4571**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY L. LANGFORD, a/k/a Larry Lamont Bush,

Defendant - Appellant.

**No. 18-6388**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY L. LANGFORD, a/k/a Larry Lamont Bush,

Plaintiff - Appellant.

Appeals from the United States District Court for the District of Maryland, at Baltimore. James K. Bredar, Chief District Judge. (1:15-cr-00539-JKB-1)

Submitted: March 28, 2019                                    Decided: May 3, 2019

Before AGEE and DIAZ, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Allen H. Orenberg, THE ORENBERG LAW FIRM, P.C., North Bethesda, Maryland, for Appellant. Robert K. Hur, United States Attorney, Zachary A. Myers, Assistant United States Attorney, Joyce K. McDonald, Assistant United States Attorney, Harry M. Gruber, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted Terry L. Langford of bank fraud, in violation of 18 U.S.C. § 1344 (2012) (Counts 1 through 5), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1) (2012) (Counts 6 through 10). The district court sentenced Langford to a total of 120 months' imprisonment. On appeal, Langford challenges his convictions and sentence. We affirm.

Langford first argues that the district court erred in declining to suppress his interview statements to law enforcement because his *Miranda*[1] waiver was coerced.

> When reviewing the district court's denial of a motion to suppress, we review factual findings for clear error and the legal determination that the statement was voluntary de novo. A confession made during a custodial interrogation will be suppressed unless police advise the defendant of his rights under *Miranda* . . . , and the defendant knowingly, intelligently, and voluntary [sic] waives those rights."

*United States v. Giddins*, 858 F.3d 870, 878-79 (4th Cir. 2017) (citations and internal quotation marks omitted). "When reviewing factual findings for clear error, we particularly defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (brackets and internal quotation marks omitted). Langford admits that he was advised of his *Miranda* rights, waived those rights, and understood the nature of the waiver and his right to counsel. However, he argues that his *Miranda* waiver and subsequent statements were

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

3

coerced by police officers' promise of releasing Langford's nephew without charges if Langford spoke to them.

> Coercive police activity is a necessary finding for a confession or a *Miranda* waiver to be considered involuntary. The mere existence of threats, violence, implied promises, improper influence, or other coercive police activity, however, does not automatically render a confession involuntary. The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination is critically impaired. The Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary.

*Giddins*, 858 F.3d at 881 (citations and internal quotation marks omitted).

The district court properly declined to suppress Langford's statements. The court did not clearly err in finding the police officer's testimony denying such threats credible over Langford's testimony to the contrary, based on the officer's demeanor and Langford's history of committing fraud crimes. While Langford testified that he had invoked his right to counsel twice prior to the interview, the district court was justified in declining to credit this testimony.

Langford next seeks review of the magistrate judge's denials of his pretrial motions to substitute counsel. Because these rulings did "not dispose of a charge or defense," Langford has forfeited appellate review by failing to challenge the rulings before the district judge. Fed. R. Crim. P. 59(a); *see* 28 U.S.C. § 636(b)(1)(A) (2012) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

Langford also contends, for the first time on appeal, that the district court erred in allowing him to proceed pro se because his waiver of his right to counsel was not knowing and intelligent and he lacked the mental competency for waiver. While counsel did not move to withdraw, and Langford was represented throughout the hearing, counsel did not engage with the court on Langford's waiver. Thus, it is unclear whether de novo or plain error review applies to this claim. *Compare United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015), (applying de novo review to finding that Ductan, who raised issue for first time on appeal, had forfeited right to counsel because district court allowed counsel to withdraw early in hearing and, "at the point the judge found a forfeiture, Ductan was very much left to his own devices" (internal quotation marks omitted)), *with United States v. Bernard*, 708 F.3d 583, 588 & n.7 (4th Cir. 2013) (applying plain error review where "defense counsel initiated and actively participated in the discussion with the court regarding Bernard's request to represent himself and his own corresponding motion to withdraw" and court granted motion to withdraw after confirming Bernard's competency). However, we need not determine which standard applies because Langford does not prevail even under the more favorable de novo review.

A defendant "may waive the right to counsel and proceed at trial pro se only if the waiver is (1) clear and unequivocal, (2) knowing, intelligent, and voluntary, and (3) timely." *Bernard*, 708 F.3d at 588. With regard to the second prong, "a district court must find that the defendant's background, appreciation of the charges against him and their potential penalties, and understanding of the advantages and disadvantages of self-

5

representation support the conclusion that his waiver of counsel is knowing and intelligent." *Ductan*, 800 F.3d at 649.

Langford's waiver was knowing and intelligent. The district court engaged in a comprehensive colloquy with Langford regarding the substantial risks of self-representation, which Langford stated multiple times that he understood. While Langford contends that the district court did not advise him during the hearing of the potential criminal penalties he faced, he does not allege that he was unaware of such penalties. *See United States v. Singleton*, 107 F.3d 1091, 1098 (4th Cir. 1997) (holding that, while district court did not discuss potential penalties during hearing on motion to dismiss counsel and proceed pro se, defendant "had the requisite appreciation" of such penalties because he was previously informed of them). Langford's contention that he lacked the mental competency for waiver is without merit. "[A] court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial." *Bernard*, 708 F.3d at 590. In this case, the transcripts and Langford's pro se filings demonstrate that he thoroughly understood the nature of the proceedings. *See id.* at 593 ("[T]he legal test for competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)).

Langford further argues that the district court should have dismissed the superseding indictment because it violated his speedy trial rights, charged the incorrect offense, and was multiplicitous. "We review the district court's factual findings on a

6

motion to dismiss an indictment for clear error" and "its legal conclusions de novo." *United States v. Hosford*, 843 F.3d 161, 163 (4th Cir. 2016) (internal quotation marks omitted).

Langford asserts that the superseding indictment violated his speedy trial rights because he only had 34 days after issuance of the superseding indictment to prepare for trial. The Speedy Trial Act provides that, without the consent of the defendant, a "trial shall not commence less than thirty days from the date . . . the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se." 18 U.S.C. § 3161(c)(2) (2012). The filing of a superseding indictment does not restart this 30-day period. *United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985). Instead, district courts are to avoid prejudice to defendants by "grant[ing] a continuance if the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* (internal quotation marks omitted). Langford's claim is unavailing because he repeatedly rejected the district court's offers of a continuance, and in any event he failed to show prejudice.

Langford next contends that the superseding indictment should have charged him with access device fraud, in violation of 18 U.S.C. § 1029 (2012), rather than bank fraud. This contention is without merit, as Langford does not allege that the charged offense conduct did not constitute bank fraud.

Langford argues that the superseding indictment violated the Double Jeopardy Clause because the bank fraud and aggravated identity theft counts that pertained to each transaction involved the same elements. The Double Jeopardy Clause "protects against

7

multiple punishments for the same offense." *United States v. Ayala*, 601 F.3d 256, 264 (4th Cir. 2010) (internal quotation marks omitted). The clause "does not, however, prohibit the legislature from punishing the same act or course of conduct under different statutes." *Id.* at 265. "Thus, when a defendant violates more than one statute in a single course of conduct, a court may impose multiple punishments without violating the Double Jeopardy Clause if the legislature authorizes it to do so." *Id.*

Langford's bank fraud and aggravated identity theft convictions do not violate his right to be free from double jeopardy. The aggravated identity theft statute imposes a sentence of two years "*in addition to* the punishment provided for [the predicate] felony," which was, in this case, bank fraud. 18 U.S.C. § 1028A(a)(1) (emphasis added). Thus, "the legislature specifically authorized cumulative punishment." *United States v. Bonilla*, 579 F.3d 1233, 1244 (11th Cir. 2009) (holding that access device fraud and aggravated identity theft convictions did not violate double jeopardy). Accordingly, the district court properly denied Langford's pro se motions to dismiss the superseding indictment.

Langford next challenges the district court's denial of his pro se motion for a new trial on the basis that the superseding indictment was constructively amended. According to Langford, he was charged with fraudulently using credit cards but evidence at trial showed that he used debit cards and accessed bank accounts. "Whether an indictment was constructively amended is a question of law we review de novo." *United States v. Miltier*, 882 F.3d 81, 92 (4th Cir.), *cert. denied*, 139 S. Ct. 130 (2018). When the district court

8

broadens the bases for conviction beyond those charged in the indictment, a constructive amendment—sometimes referred to as a fatal variance—occurs. A fatal variance occurs when the indictment is altered to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment.

*Id.* at 93 (citation and internal quotation marks omitted). Conversely, "minor discrepancies between the Government's charges and the facts proved at trial generally are permissible" if they do not "prejudice[] the defendant . . . by surprising him at trial and hindering the preparation of his defense." *Id.* (internal quotation marks omitted).

The superseding indictment was not constructively amended. The superseding indictment's allegations regarding account numbers, victims' initials, and the dates and locations of purchases, corresponded to evidence at trial showing that Langford used debit cards that were reencoded with information from other individuals' bank accounts as credit cards to make purchases.

Langford next argues that he was entitled to a new trial based on newly discovered evidence that, at the time of trial, a witness was under investigation for fraud offenses. According to Langford, the Government committed a *Brady*[2] violation by failing to disclose this evidence prior to trial. "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "We review the district court's Rule 33 decision for abuse of discretion." *United States v. Robinson*, 627 F.3d 941, 948 (4th Cir. 2010). In order for new evidence to warrant a new trial:

_____

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

9

(a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Id.* (quoting *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993)).

"A district court abuses its discretion [in denying a new trial] when it commits a legal error in determining whether a *Brady* violation has occurred; we therefore review the district court's *Brady* ruling de novo." *United States v. Parker*, 790 F.3d 550, 558 (4th Cir. 2015). "[U]nlike *Custis* and Rule 33 generally, *Brady* covers impeachment as well as exculpatory evidence." *Robinson*, 627 F.3d at 951. "To establish a *Brady* violation, a defendant must show (1) that the undisclosed information was favorable, either because it was exculpatory or because it was impeaching; (2) that the information was material; and (3) that the prosecution knew about the evidence and failed to disclose it." *Parker*, 790 F.3d at 558.

Langford was not entitled to a new trial pursuant to *Custis* and Rule 33, as the newly discovered evidence was merely impeaching, was not material, and would not have resulted in an acquittal. *See Robinson*, 627 F.3d at 948. Even without Doe's testimony, there was overwhelming evidence of Langford's guilt. *See id.* at 949 (noting that, in absence of *Brady* violation, newly discovered impeachment evidence warrants retrial only when "government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed"). Langford was also not entitled to a new trial pursuant to *Brady* because, for the reasons

10

discussed above, the new evidence was not material. *See Parker*, 790 F.3d at 558 (noting that *Brady* evidence is material if, with such evidence, there is reasonable probability that jury would have acquitted). Thus, the district court properly denied Langford's motions for a new trial.

Langford further claims that evidence at trial was insufficient to convict because it did not establish that he knew that the holders of the accounts he accessed were real people or that he falsely represented himself to be the holder of these accounts. Langford has waived appellate review of these arguments by failing to raise them in his motion for a judgment of acquittal. *See United States v. Chong Lam*, 677 F.3d 190, 200 (4th Cir. 2012) (joining majority of circuits in holding that defendant who raises specific grounds in Rule 29 motion waives appeal of any grounds not specifically raised). "To the extent that an exception to this rule exists in situations in which a manifest miscarriage of justice has occurred, this is not such a case." *See id.* at 200 n.10 (citation and internal quotation marks omitted).

Finally, Langford raises a variety of challenges to the calculation of his Guidelines range. "In assessing the district court's calculation of the Guidelines range, we review its legal conclusions de novo and its factual findings for clear error." *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014).

Langford argues that the district court improperly applied a 2-level obstruction of justice enhancement pursuant to U.S. Sentencing Guidelines Manual § 3C1.1 (2016), based on his post-arrest use of a Bluetooth device to instruct his nephew to dispose of

11

evidence.[3] The obstruction of justice enhancement is appropriate when "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction." USSG § 3C1.1. The enhancement specifically applies to "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation . . . or attempting to do so." USSG § 3C1.1 cmt. n.4(D). "[H]owever, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation . . . of the instant offense . . . ." *Id.*

Application of the enhancement was proper, as Langford's conduct does not fall under Application Note 4(D)'s exception. Langford's surreptitious post-arrest use of the Bluetooth device was a more sophisticated scheme than the application note's example of a defendant attempting to swallow or discard drugs directly prior to arrest. *See United States v. Bedford*, 446 F.3d 1320, 1325 (10th Cir. 2006) (limiting Application Note 4(D)'s exception to "conduct admitting a spontaneous or visceral or reflexive response occurring at the point arrest becomes imminent" (internal quotation marks omitted)); *United States v. Sykes*, 4 F.3d 697, 699 (8th Cir. 1993) (same and ruling that defendant's post-arrest destruction of stolen checks in police vehicle did not qualify for exception).

---

[3] Langford also argues that his testimony during the hearing on his motion to suppress did not warrant the enhancement, but the district court declined to base the enhancement on this ground.

Langford next challenges the district court's imposition of an upward departure from criminal history category V to VI pursuant to USSG § 4A1.3(a), p.s. based on the seriousness of his criminal history. Such a departure is authorized when "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." USSG § 4A1.3(a)(1), p.s. The district court was justified in departing upward based on Langford's extensive criminal record, which included 22 prior convictions, the majority of which were fraud convictions that did not receive criminal history points because they were outdated. *See* USSG § 4A1.3(a)(2)(A), p.s. (providing that courts may consider "[p]rior sentence(s) not used in computing the criminal history category" in deciding whether to depart upward).

Finally, Langford asserts that the district court erred in denying him a § 5H1.3, p.s. downward departure for mental and emotional conditions. This argument is without merit as the district court applied such a downward departure, decreasing Langford's Guidelines range by eight months.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

13