**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4201**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

WILLIAM SCOTT DAVIS, JR.,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, Senior District Judge. (5:14-cr-00240-BR-1)

Argued: December 11, 2019                    Decided: January 21, 2020

Before NIEMEYER, MOTZ, and RICHARDSON, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Patricia Palmer Nagel, LAW OFFICES OF PATRICIA PALMER NAGEL, PLC, Williamsburg, Virginia, for Appellant. Javier Alberto Sinha, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Brian A. Benczkowski, Assistant Attorney General, Matthew S. Miner, Deputy Assistant Attorney General, Sonja M. Ralston, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Robert J. Higdon, Jr., United States Attorney, Jennifer May-Parker, Assistant United States Attorney, Appellate Chief, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury convicted William Scott Davis, Jr. of one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(B), and three counts of sending threatening interstate communications, in violation of 18 U.S.C. § 875(c). The district court sentenced him to a 144-month term of imprisonment and three years of supervised release. Davis appeals, contending that the district court committed a panoply of errors. For the following reasons, we affirm.

I.

In the spring of 2001, Davis and his partner, Michele Jaworski, moved from the United States to Belgium. Shortly thereafter, Davis and Jaworski became parents to a baby girl, J.D. Within days of J.D.'s birth, Davis returned, with the child, to the United States. Davis subsequently married Myriam Bouzouad ("Myriam"), and Davis, Myriam, and J.D. settled in Cary, North Carolina.

Between 2004 and 2007, the Cary Police Department responded to several alleged domestic violence incidents at the Davis household. Although charges were brought against Davis in connection with some of these incidents, they were ultimately dropped. In July 2007, however, Detective Michelle Savage learned that Davis had assaulted Myriam in J.D.'s presence. Savage reported the incident to Child Protective Services ("CPS"), which investigated the incident and subsequently placed J.D. in foster care. Following extensive family court proceedings — during which Davis exhibited particularly

3

aggressive behavior towards Jaworski's court-appointed attorney, Sydney Batch —
Davis's parental rights were terminated.

During the CPS investigation, prosecutors discovered that J.D.'s birth certificate
had been altered to include an earlier date of birth and to list Myriam as her biological
mother. Consequently, Davis was charged with Common Law Forgery and Obtaining
Property by False Pretense.[1] Assistant District Attorney Melanie Shekita prosecuted the
case against Davis, and he was convicted in 2009.

Following his conviction, Davis relentlessly began to harass Savage, Batch, and
Shekita, among others. For example, Davis filed complaints with the North Carolina State
Bar against Batch and Shekita, and brought a series of frivolous lawsuits against all three
women. Davis also sent Savage, Batch, and Shekita hundreds of letters, faxes, and emails.
At first, these communications were principally "litigious" in nature, expressing Davis's
frustration regarding his court cases and accusing the women of violating his civil rights.
In July 2014, however, the tenor of Davis's communications changed.

On July 17, 2014, Davis sent a lengthy email to Batch and several other recipients
threatening, in explicit detail, sexual violence against Shekita and Batch.[2] Davis followed

---

[1] Davis's use of a forged birth certificate to enroll J.D. in school a year before she
would have been eligible provided the basis for the charge of Obtaining Property by False
Pretense.

[2] The contents of the July 17 email are graphic and disturbing. They include: "All
the f---ing bull s---, falls on Shekita Lilly white prejudicial ass. I am going to WEARING
her . . . prejudicial white ASS out she will never be able to walk again or practice law. . . .
YOU F---ING Racist, Sexist BITCHES. then I [going] to start on . . . Batch . . . for just
deserts . . . ."

4

this email with another one on August 6, 2014, threatening similar acts towards Shekita and Savage. Shortly thereafter, Davis sent yet another email — this one addressed to Batch alone — which stated: "There is no where you, your family, your husband is going to be able to run and hide, and there [is not] a damn thing that you are going to be able to do to stop what's coming you[,] your family, your husband way. GOD HELP you."

Based on these emails, the Government charged Davis with three counts of cyberstalking, in violation of 18 U.S.C. § 2261A, and three counts of sending threatening interstate communications, in violation of 18 U.S.C. § 875(c).[3] Two of the cyberstalking counts were dismissed prior to trial.

On February 2, 2015, the district court ordered that Davis undergo a psychological evaluation to determine his competency to stand trial. At the initial competency hearing, a forensic psychologist testified that Davis had the ability to understand the charges against him and to assist his attorney in his defense. After hearing this testimony, the court granted Davis's unopposed motion for a second competency evaluation, stating that "it might be best to get another opinion."

Davis's second evaluator concluded that Davis was not competent to stand trial. At the second competency hearing, the district court found Davis incompetent to stand trial and remanded him to the custody of the Attorney General for competency restoration. Davis then appealed the district court's order on the ground that he had been denied the

---

[3] A phone call that Davis placed to Batch, impersonating an FBI agent and threatening Batch with arrest, provided an additional basis for the cyberstalking count.

right to testify at the hearing. We agreed and vacated the district court's order, remanding with instructions to conduct a new competency determination pursuant to 18 U.S.C. § 4241(c).[4] *See United States v. Davis*, 672 F. App'x 299, 300 (4th Cir. 2017).

During the pendency of Davis's appeal, a third forensic psychologist, Kristina Lloyd, conducted a third competency evaluation. On remand from Davis's appeal, the district court held a third competency hearing, at which Lloyd testified that Davis was competent to stand trial. Although Lloyd concluded that Davis had "narcissistic personality disorder" and "antisocial personality traits," she opined that these conditions did not render him incompetent; rather, he had the ability to consult with his attorney and rationally evaluate the government's evidence. Lloyd also testified that although Davis's conduct might lead some to think he is delusional, "the very definition of a delusion is a fixed false belief that's not amenable to change when given contrary information. But Mr. Davis's beliefs are amenable to change — even if he is characterized as a stubborn individual."

After affording Davis an opportunity to testify on his own behalf, the district court found that Davis's competency had been restored and the case proceeded to trial. After a three-day trial, the jury convicted Davis on all counts.

At sentencing, the district court determined that Davis's offense level was 25, adopting the pre-sentence report's recommendation to impose a sentencing enhancement

---

[4] 18 U.S.C. § 4241(c) governs the conduct of competency hearings. Notably, we did not direct the district court to order a new psychological evaluation of Davis pursuant to § 4241(b).

for obstruction of justice pursuant to Section 3C1.1 of the Sentencing Guidelines. The enhancement was based on an email that Davis had sent to Shekita, prior to his sentencing, stating "Shekita got to pay for this" and threatening to sue her for $10 million. The district court separately found that the enhancement was warranted based on Davis's perjuring himself at trial regarding the intent of his emails.

The district court also increased Davis's criminal history category from III to V, finding that the lower criminal history category understated the seriousness of Davis's past criminal conduct. The court sentenced Davis to 144 months' imprisonment — an upward variance from the Guidelines range of 100 to 125 months. Davis timely appealed.

## II.

"A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). As courts have long recognized, this rule is vital to securing a defendant's rights at trial, "including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so." *Riggins v. Nevada*, 504 U.S. 127, 139–40 (1992) (Kennedy, J., concurring).

"[T]he legal test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'" *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). This formulation "focus[es] . . . on a particular level of

mental functioning," and a defendant's understanding of the proceedings is the "crucial component." *Godinez*, 509 U.S. at 404 (Kennedy, J., concurring in part and concurring in the judgment). The defendant bears the burden of proving incompetency by a preponderance of the evidence, *see United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005), and such evidence may include "behavioral history and relevant medical opinions," as well as the "court's first-hand interactions with, and observations of, the defendant and the attorneys at bar," *Bernard*, 708 F.3d at 593. "[B]ecause district courts are in the best position to make competency determinations, . . . we appropriately afford them wide latitude," *id.*, and will reverse a competency determination only if the district court committed clear error, *see Robinson*, 404 F.3d at 856.

We find no clear error in the district court's determination that Davis was competent to stand trial. Davis's interactions with the court at his third competency hearing evidence a sound grasp of the legal proceedings despite their complex posture. He cogently asked and answered questions related to his defense and even corrected the district court regarding the status of his pending appeals. *See Walton v. Angelone*, 321 F.3d 442, 460 (4th Cir. 2003) (noting that the defendant exhibited competence by "demonstrat[ing] his understanding of the charges and the trial proceedings" and giving "clear and responsive" answers to questions). Moreover, the forensic psychologist Lloyd testified that, despite his uncooperative behavior, Davis had the *ability* to rationally evaluate the strengths and weaknesses of the government's evidence and to consult with his attorney. It was well within the district court's "wide latitude" to rely on Davis's demeanor and Lloyd's expert

8

testimony and find that Davis failed to meet his burden to show incompetency by a preponderance of the evidence. *See Bernard*, 708 F.3d at 593.

Nor do we find clear error in the district court's denial of Davis's subsequent requests for a new competency determination or in its failure to undertake such a determination *sua sponte*. To be sure, a court "must continually be alert for changes [that] would suggest that [a defendant] is no longer competent." *Beck v. Angelone*, 261 F.3d 377, 387 (4th Cir. 2001). But the record in this case is devoid of any evidence of a change in Davis's behavior or demeanor that would warrant reconsideration of his competency to stand trial.

Davis's arguments to the contrary are unavailing. First, Davis cites his filing of "more than 600 pro se pleadings" and his frequent conflicts with counsel as evidence of his inability to assist in his defense. But the fact that a defendant has engaged in irrational conduct "does not invariably compel a finding of incompetency." *Bernard*, 708 F.3d at 593. That Davis filed voluminous legal documents does not necessarily mean that he lacked an understanding of the proceedings against him — indeed, his interactions with the district court during his competency hearing suggest just the opposite. Similarly, we have never held that a defendant's refusal to cooperate with appointed counsel is tantamount to incompetency and we decline to do so now.

Second, Davis argues that the district court erred in failing to order a new psychological evaluation on remand, which Davis contends that our previous opinion required. But we only directed the district court to conduct "a new initial competency determination pursuant to 18 U.S.C. § 4241(c)" — that is, a new competency hearing. *See*

9

*Davis*, 672 F. App'x at 300. We did not hold that a new psychological evaluation and report were required, nor did we "vacate" any of the existing reports, as Davis contends. Rather, as our opinion made clear, the defect in Davis's initial competency determination was not the psychological evaluation and report, but the district court's failure to allow Davis to testify. *See id.*

Finally, Davis asserts that the district court erred in failing to order an evaluation of his sanity at the time of the offense. When a defendant files a notice of his intent to rely on the affirmative defense of insanity, the district court must, on the Government's motion, order a psychiatric or psychological examination and report. *See* 18 U.S.C. § 4242(a). Davis acknowledges that such an evaluation was conducted pursuant to § 4242(a), but contends that the resulting report was vacated by our previous opinion. This argument fails; as noted above, our opinion held only that the district court was required to conduct a new competency hearing.

III.

Davis next contends that the district court erred in denying his motion for judgment of acquittal. "We review de novo the district court's denial of a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure." *United States v. Jaensch*, 665 F.3d 83, 93 (4th Cir. 2011). "We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *Id.* In assessing whether the evidence was sufficient, we "must determine whether any rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

A.

To establish the offense of sending threatening interstate communications under 18 U.S.C. § 875(c), the Government must prove (1) "that the defendant knowingly transmitted a communication in interstate or foreign commerce," (2) "that the defendant subjectively intended the communication as a threat" — that is, that the defendant had either the purpose of issuing a threat or knowledge that the communication would be viewed as a threat, and (3) that the communication constituted a "true threat," meaning that "an ordinary, reasonable recipient who is familiar with the context in which the statement is made would interpret it as a serious expression of an intent to do harm." *United States v. White*, 810 F.3d 212, 220–21 (4th Cir. 2016).

Viewed in the light most favorable to the Government, the evidence certainly provided a sufficient basis for the jury to find the elements of sending threatening interstate communications beyond a reasonable doubt. First, the Government established that Davis's emails to Batch, Shekita, and Savage were sent from Davis's email accounts. Second, the emails themselves demonstrate Davis's subjective intent to threaten; in stark and explicit terms the emails warn of brutal sexual violence. The graphic emails — which among other things warn his victims that they "will never be able to walk again" and cannot "run and hide" or "stop what's coming" — amply support the jury's finding that Davis had the subjective intent to threaten. *Cf. White*, 810 F.3d at 222 (element of subjective intent established where email's language — "you are going to have the living shit beat out of

11

you" — was "direct and declarative, not circumspect or hypothetical"). Though Davis frames his emails as mere "venting," evincing only an "intent to treat the complainants harshly," the jury was not required to accept this characterization. Third, the Government offered sufficient evidence for the jury to find that a reasonable recipient of the emails would view them as a serious expression of intent to harm. This is especially so in light of the context in which the emails were sent — Davis had a known history of violent behavior and had undertaken a campaign of targeted harassment against Batch, Shekita, and Savage.

Davis also challenges his § 875(c) convictions on the ground that the indictment failed to allege Davis's subjective intent to threaten. Because Davis failed to raise this objection before trial, we review for plain error. *See United States v. King*, 628 F.3d 693, 699 (4th Cir. 2011). Under the plain error standard, "we possess discretion on whether to recognize the error, but we should not do so unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Cohen*, 888 F.3d 667, 685 (4th Cir. 2018) (internal quotation marks omitted). Assuming without deciding that the indictment failed to charge a violation of § 875(c), any such error did not affect the fairness, integrity, or public reputation of judicial proceedings. The district court instructed the jury that in order to establish a violation of § 875(c), the Government had to prove Davis's subjective intent to threaten. And, as discussed above, the evidence sufficed to prove subjective intent.

B.

The offense of cyberstalking under 18 U.S.C. § 2261A can be established by proof that (1) the defendant, with intent to harass or intimidate, (2) used a facility of interstate

12

commerce (including electronic communication services) (3) to engage in a course of conduct (4) that placed the victim in reasonable fear of death or serious bodily injury, or "causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress." 18 U.S.C. § 2261A (2013) (amended 2018).

Davis does not contest that sending emails to Batch constitutes a course of conduct utilizing a facility of interstate commerce. His principal argument is that "it is difficult to discern to what extent, if any, Davis'[s] conduct [in sending the emails] was [a] contributor [to] any substantial emotion[al] distress Batch experienced." Opening Br. at 41. Davis argues that Batch's emotional distress may have been caused by other conduct, such as his filing of civil lawsuits and bar complaints. This argument fails — regardless of what degree of distress Davis's emails actually caused, the cyberstalking statute covers acts that would be *reasonably expected* to cause substantial emotional distress. 18 U.S.C. § 2261A. A rational trier of fact could find that Davis's emails to Batch, which explicitly threatened violence against Batch and her family, would be reasonably expected to cause substantial emotional distress.

C.

Davis also contends that his § 2261A and § 875(c) convictions are multiplicitous. Davis waived this argument by failing to raise it prior to trial. *See United States v. Cabrera-Beltran*, 660 F.3d 742, 753–54 (4th Cir. 2011).

D.

Finally, Davis argues that his emails to Batch constitute protected speech, and that the cyberstalking statute is both overbroad and unconstitutional as applied. We need not

13

address these arguments, which Davis has forfeited by failing to develop them in his opening brief. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).

IV.

Davis next challenges his sentence as procedurally and substantively unreasonable. We review criminal sentences for reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). "[W]e review the district court's legal conclusions de novo and factual findings for clear error." *United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019).

First, Davis argues that the district court erred in assigning a criminal history point to a 2014 state conviction for assault in Virginia. Davis contends that under Virginia law, his appeal of the conviction entitled him to a de novo trial in the circuit court, *see Baugh v. Commonwealth*, 417 S.E.2d 891, 894–95 (Va. Ct. App. 1992), *overruled in part on other grounds by Gilman v. Commonwealth*, 657 S.E.2d 474 (Va. 2008); accordingly, his assault conviction was vacated. This does not warrant excluding the conviction from Davis's criminal history score under the Guidelines, for the sentence was not "vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant." U.S.S.G. § 4A1.2 cmt. n.6; *see also United States v. Martin*, 378 F.3d 353, 357–58 (4th Cir. 2004) (holding that North Carolina conviction counted towards defendant's criminal history score, notwithstanding the fact that it was automatically vacated upon appeal under the state's "two-tier" criminal trial system).

14

Second, Davis contends that the district court erred in imposing an enhancement for obstruction of justice pursuant to Section 3C1.1 of the Guidelines. The enhancement applies where "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1. Covered conduct includes "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1 cmt. n.4(A). The district court did not clearly err in finding that Davis's email to Shekita prior to sentencing — which stated "Shekita got to pay for this" and which threatened to sue her for $10 million — was sent with the purpose of influencing Shekita prior to her allocution at the sentencing hearing. Moreover, the email directly violated the district court's order prohibiting Davis from contacting his victims. Davis contends that the email did not *actually* influence Shekita, but this distinction is immaterial — the Guideline expressly covers *attempts* to obstruct justice. *See id.* § 3C1.1.[5]

Third, Davis argues that the district court erred in increasing his criminal history category from III to V. Section 4A1.3 of the Guidelines authorizes an upward departure where "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the

[5] Because we affirm the district court's imposition of the enhancement based on Davis's email to Shekita, we need not address the alternative ground that the enhancement was warranted on the basis of Davis's alleged perjury.

15

likelihood that the defendant will commit other crimes." *Id.* § 4A1.3(a)(1). The district court imposed the upward departure based on the "history and pattern of domestic assault which did not result in convictions, but . . . the court finds credible." Davis contends that this constitutes error because the domestic assault incidents prior to July 2007 did not result in criminal convictions or the entry of permanent protective orders. This argument also fails; the Guidelines expressly permit a district court to consider "adult criminal conduct not resulting in a criminal conviction" in determining a defendant's criminal history category. *Id.* § 4A1.3(a)(2)(E).

Fourth, Davis claims that the district court erred in denying downward departures under § 5H1.1, .3, and .4 on the basis of his poor physical and mental health. We lack the authority, however, to review the denial of a downward departure unless the sentencing court "failed to understand its authority to do so." *United States v. Hackley*, 662 F.3d 671, 686 (4th Cir. 2011). Davis does not argue, and the record does not reflect, that the district court failed to understand its authority to grant the requested departures.

Finally, Davis contends that his sentence is substantively unreasonable, noting that his sentence of 144 months' imprisonment constitutes an upward variance from the Guidelines range of 100 to 125 months. "In reviewing [a] sentence for substantive reasonableness, we must examine the totality of the circumstances . . . to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mills*, 917 F.3d 324, 331 (4th Cir. 2019) (alterations and internal quotation marks omitted). A "district court's explanation for the sentence must support the degree of" any deviation from the Guidelines, but the court "need

16

not find extraordinary circumstances [in order] to justify a deviation." *United States v. Spencer*, 848 F.3d 324, 327 (4th Cir. 2017) (citations and internal quotation marks omitted). "[A]ll sentencing decisions — whether inside, just outside, or significantly outside the Guidelines range — are entitled to due deference." *Id.* (internal quotation marks omitted).

The district court did not abuse its discretion in sentencing Davis to 144 months' imprisonment. The court found that a variant sentence was necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment — factors properly considered under 18 U.S.C. § 3553(a). Davis maintains that an upward variance was not warranted in light of the district court's statement that Davis "cannot be deterred from harassing the victims." But deterrence is only one of the § 3553(a) factors. Even assuming that Davis cannot be deterred from further criminal conduct, his sentence serves to protect the public during his period of incarceration, *see* § 3553(a)(2)(C) — a factor to which the district court gave considerable weight.

We have considered Davis's remaining arguments and conclude that they are without merit.

V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.