**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 21-4436**

─────────────

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MAURICE BRANDON RAKESTRAW,

Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:20-cr-00015-RJC-DCK-1)

─────────────

Argued:  October 26, 2022                              Decided:  February 3, 2023

─────────────

Before KING and HEYTENS, Circuit Judges, and Sherri A. LYDON, United States District Judge for the District of South Carolina, sitting by designation.

─────────────

Affirmed by unpublished opinion. District Judge Lydon wrote the opinion, in which Judge King and Judge Heytens joined.

─────────────

**ARGUED:** Eric Anthony Bach, Charlotte, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:** Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

LYDON, District Judge:

After Maurice Rakestraw carjacked a vehicle with a baby inside, led police on a high-speed chase, wrecked the car and fled the scene of the crash, a grand jury indicted Rakestraw for carjacking, brandishing a firearm in furtherance of a crime of violence, possessing a firearm as a felon, and stealing a firearm. He pleaded guilty to all four counts. Before accepting Rakestraw's guilty plea, the magistrate judge, with the benefit of a competency evaluation, found Rakestraw competent to proceed. Nine months later, he was sentenced to 264 months' imprisonment—30 months above the Sentencing Guidelines recommendation. Rakestraw timely appeals and argues the district court should have ordered a second evaluation prior to sentencing. He also argues his sentence is procedurally and substantively unreasonable. Finding no reversible error, we affirm.

I.

The events leading to Rakestraw's arrest, conviction, and sentencing started on December 3, 2019, when he forcibly entered his ex-girlfriend's residence, assaulted her, and stole her firearm and vehicle. Sealed J.A. 102–03. Two days later, Rakestraw was a passenger in a vehicle stopped by Charlotte-Mecklenburg Police officers. Sealed J.A. 101. Before one of the officers could frisk Rakestraw, he fled on foot and ended up in the parking lot of a nearby apartment complex. Sealed J.A. 101.

Rakestraw then approached a couple attempting to enter their vehicle and threatened to kill the driver if he did not give over the car. Rakestraw drove away with the couple's baby still in the backseat. Sealed J.A. 101. While fleeing police, he crashed into a trailer

2

and flipped the car. Sealed J.A. 102. After the crash, he ran without ever checking on the status of the baby. Sealed J.A. 102. Police quickly caught him. Sealed J.A. 102.

Rakestraw was charged with carjacking, in violation of 18 U.S.C. § 2119, brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c), possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1), and stealing a firearm, in violation of 18 U.S.C. § 924(l). J.A. 18.1–18.2. After Rakestraw's indictment, but before his change of plea hearing, the district court granted Rakestraw's motion for a competency evaluation. Sealed J.A. 85–86.

Michael Coffman, a forensic psychologist, evaluated Rakestraw and concluded that he was competent to stand trial. Sealed J.A. 96. According to Coffman, Rakestraw purposely tried to achieve a low score on the GCCT-MSH, a standard test used to measure legal knowledge and competency. Sealed J.A. 94. For example, Rakestraw said he did not know who his attorney was but then used his lawyer's name in a request to his case manager. Sealed J.A. 95. Rakestraw also acknowledged he understood he had a right to speak with his lawyer. Sealed J.A. 95. Ultimately, Coffman diagnosed Rakestraw with "malingering," suggesting Rakestraw feigned mental health symptoms as shown by "monitored telephone calls express[ing] an understanding that his present evaluation represented one of several legal tactics in his case." Sealed J.A. 93–94. Coffman specified "Rakestraw did not endorse suicidal plan or intent." Sealed J.A. 92.

The magistrate judge held a combined competency and Fed. R. Crim. P. 11 plea hearing. J.A. 21–40. Rakestraw indicated he intended to enter a plea of guilty to all four counts without a plea agreement. J.A. 22. Before taking Rakestraw's plea, the magistrate

judge reviewed the competency report, questioned both parties about additional information related to competency, and found Rakestraw competent to proceed. J.A. 23–25.

The magistrate judge then placed Rakestraw under oath and warned him he could be prosecuted for perjury if he answered the court's questions untruthfully. J.A. 26. Rakestraw explained he was taking prescription medications Tegretol and Remeron but confirmed that those medications helped him understand the proceedings and that he understood he was in court to plead guilty. J.A. 27-28. The magistrate judge found that Rakestraw's guilty plea was knowing and voluntary and not the product of threats or coercion. J.A. 39.

Following Rakestraw's guilty plea, the probation officer prepared a presentence report (PSR), calculating a total offense level of 26 and a criminal history category VI, resulting in an advisory Guidelines range of 120 to 150 months' imprisonment, plus the mandatory, consecutive 84-month sentence for Rakestraw's § 924(c) conviction. Sealed J.A. 105, 111, 119; *see* U.S. Sentencing Guidelines Manual ch. 5, pt. A (sentencing table), § 2K2.4 (2018). The probation officer recounted that Rakestraw assaulted his ex-girlfriend and stole a firearm and vehicle. Sealed J.A. 102–03. The PSR also set forth the details of the carjacking involving the baby and the high-speed chase. Sealed J.A.101–102. Rakestraw did not object to the PSR. Sealed J.A. 123.

The day before the scheduled sentencing hearing, Rakestraw, through counsel, moved to continue. Sealed J.A. 124. In the continuance motion, counsel explained that he had struggled to schedule a meeting with Rakestraw because of a COVID-related prison

4

lockdown and Rakestraw's transport to the hospital for a mental health watch. Sealed J.A. 124. Counsel further provided that "there was a self-harm issue" that felt like "a legitimate competency issue . . . as opposed to an issue of malingering." Sealed J.A. 125. Because counsel believed this self-harm incident presented a legitimate competency issue, he explained he needed 10 to 14 days to receive the medical records to fully assess the situation. Sealed J.A. 125.

At the sentencing hearing, the district court allowed counsel to present arguments regarding the requested continuance and the issue of competency. J.A. 48. Counsel asserted that Sheriff's Department staff had informed him that Rakestraw jumped off "an elevation" and "also tried to choke himself with a bedsheet." J.A. 48–49. Counsel told the district court he needed a continuance to obtain Rakestraw's medical records to determine whether there was a competency issue. J.A. 49–50.

The district court, referencing the prior evaluation, noted that nothing counsel argued called the earlier evaluation into question. J.A. 49. Counsel replied that the attempted suicide cast renewed doubt on Rakestraw's competency. J.A. 49–50. The court credited the veracity of counsel's presentation but denied the motion to continue, finding no evidence Rakestraw was incompetent. Sealed J.A. 50–52. The court concluded Rakestraw had a chance to read the PSR, to understand its contents, and to review it with counsel. J.A. 50–52. Further, the district court determined counsel had adequate time to prepare for Rakestraw's sentencing. J.A. 51–52. Rakestraw also talked with his counsel during a brief recess. J.A. 51–52.

5

The sentencing went forward and counsel asked the district court to order the sentence on the § 924(c) count to run concurrently with the sentence on the other counts. J.A. 54. Counsel emphasized that Rakestraw's birth mother was addicted to crack cocaine, likely leading to Rakestraw's "severe mental health problems." J.A. 55. On the other hand, counsel noted that Rakestraw had support from his adopted parents and wished to provide for his daughter when released from prison. J.A. 55–56. Counsel requested "a sentence in the 60-month range on Counts One and Three." J.A. 56.

The court asked counsel how he could reconcile Rakestraw's desire to provide for his daughter with "a pretty reckless disregard for the health and safety of a baby trapped in a car that [he] carjacked." J.A. 57. Counsel admitted "it is extremely hard to reconcile those things," but indicated that Rakestraw had been able "to get some mental health treatment" in detention. J.A. 57. In allocution, Rakestraw "accept[ed his] wrongdoing," and said he wished to "get [himself] together" and support his daughter. J.A. 58. The Government requested an aggregate sentence of 235 months' imprisonment based on the egregious offense conduct, Rakestraw's detention misconduct, and his lengthy criminal history. J.A. 58–63. The court also heard from the carjacking victims. J.A. 64–65. The couple asked the court to enter a just sentence to account for the continued fear and worry they have faced since the violent incident. J.A. 64–65.

The court reviewed counsel's mitigation arguments. J.A. 65–66. The court also emphasized Rakestraw's long criminal history and asserted that "the facts of the case are appalling." J.A. 66. The court noted many of Rakestraw's prior convictions did not receive any criminal history points. J.A. 66–67. And, reviewing the facts of the case, the court also

6

observed "[m]any of these facts are not accounted for in the [G]uidelines." J.A. 67. The

court considered the need to protect the public and was concerned that prior, shorter

sentences had not deterred Rakestraw's criminal activity. J.A. 67–68. The district court

believed the Guidelines range did not adequately accomplish the goals of sentencing and

imposed a variant sentence of 264 months' imprisonment—30 months above the

Guidelines recommendation. J.A. 68. Rakestraw filed a timely notice of appeal. J.A. 83.

On appeal, Rakestraw challenges the district court's failure to order a second competency

hearing and his above-Guidelines sentence.

## II.

## A.

We review a district court's failure to *sua sponte* order a competency hearing for

abuse of discretion. *United States v. Snead*, 502 F. App'x 231, 233 (4th Cir. 2012) (citing

*United States v. Banks*, 482 F.3d 733, 742 (4th Cir. 2007)).[*] A district court must order a

competency hearing "if there is reasonable cause to believe that the defendant may

presently be suffering from a mental disease or defect rendering him mentally incompetent

to the extent that he is unable to understand the nature and consequences of the proceedings

against him or to assist properly in his defense." 18 U.S.C. § 4241(a). "Reasonable cause

may be established through evidence of irrational behavior, the defendant's demeanor at

---

[*] The Government argues Rakestraw failed to preserve his argument that the district court should have ordered a second competency hearing. Government's Resp. Br., p. 23. However, Rakestraw's counsel squarely raised the issue of competency before the district court prior to sentencing while arguing for a motion for a continuance. Accordingly, we find the issue preserved.

trial, and medical opinions concerning the defendant's competence." *United States v. Bernard*, 708 F.3d 583, 592–93 (4th Cir. 2013) (internal quotation marks omitted) (citation omitted). "To prevail, the defendant must establish that the trial court ignored facts raising a bona fide doubt regarding [his] competency." *United States v. Moussaoui*, 591 F.3d 263, 291 (4th Cir. 2010) (citation omitted).

Rakestraw argues the district court erred by not ordering a second competency evaluation following his suicide attempt prior to his sentencing. We conclude the court did not abuse its discretion in declining to order a second evaluation. "[T]he presence of some degree of mental illness is not to be equated with incompetence." *Bernard*, 708 F.3d at 593 (cleaned up). Instead, "the legal test for competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Id.* (internal quotation marks omitted) (citations omitted).

Here, the district court granted Rakestraw's first motion for a competency evaluation, and the defendant underwent an assessment conducted by a forensic psychologist. The psychologist determined Rakestraw to be competent and observed that Rakestraw treated the evaluation merely as a legal ploy. Prior to accepting the guilty plea, the magistrate judge conducted a competency hearing. During the hearing the magistrate judge read key portions of the forensic evaluation and solicited additional evidence from both parties before determining Rakestraw was competent to proceed.

A review of the transcripts from the guilty plea hearing and the sentencing hearing reveals Rakestraw clearly understood the nature of the charges against him and their

8

potential consequences. The only information presented at the sentencing hearing calling Rakestraw's competence into question was his recent suicide attempt. Previously, we have found a defendant incompetent only when his attempted suicide coincided with additional factors. *See United States v. Mason*, 52 F.3d 1286, 1292 (4th Cir. 1995) (noting defendant's "suicide attempt [was] accompanied by medical reports submitted to the court that indicate [he] was suffering from an affective disorder and alcohol dependence during the trial, as well as evidence that two physicians are of the opinion that [he] was not competent during the first phase of the trial").

Here, Rakestraw's counsel failed to provide any additional information calling into question Rakestraw's ability to consult with his counsel and participate in his own defense. Indeed, the district court expressly credited the suicide attempt but determined that, without additional evidence, nothing existed to challenge the previous determination of Rakestraw's competence to proceed. Furthermore, Rakestraw's conduct during the sentencing hearing demonstrated he understood the proceedings and could assist his attorney in preparing a mitigation argument. *See United States v. General*, 278 F.3d 389, 398 (4th Cir. 2002) (noting that defendant "was cooperative during the sentencing hearing and informed the district court that he was able to discuss and review the presentence report with his attorney"). Therefore, we find that, while Rakestraw's attempted suicide presented a serious event, it alone did not require the district court to *sua sponte* order a second competency evaluation.

B.

9

We now review Rakestraw's above-Guidelines sentence "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Under the *Gall* standard, we review a sentence for both procedural and substantive reasonableness. *Id.* at 51. In determining procedural reasonableness, we consider whether the district court properly calculated the defendant's advisory Sentencing Guidelines range, allowed the parties to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence. *Id.* at 49–51. If a sentence is free of "significant procedural error," then we review it for substantive reasonableness, "tak[ing] into account the totality of the circumstances." *Id.* at 51.

Rakestraw raises one procedural challenge to his sentence, arguing the district court erred in imposing an upward departure without providing notice under Fed. R. Crim. P. 32(h). The district court imposed an upward variance and not an upward departure. Rule 32(h) only applies when a district court imposes an upward departure under the Guidelines, not a variance under the § 3553(a) factors. *Irizarry v. United States*, 553 U.S. 708, 714 (2008). We thus discern no procedural error in this case. *See United States v. Spencer*, 848 F.3d 324, 327–28 (4th Cir. 2017) (emphasizing the distinction between departures and variances and looking at district court's intent in determining whether it imposed an upward departure or variance).

Rakestraw also challenges the substantive reasonableness of his sentence. "In reviewing a variant sentence, we consider whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." *United States v. Washington*, 743 F.3d 938,

10

944 (4th Cir. 2014) (internal quotation marks omitted). "We will vacate such [a] sentence if its stated reasoning is inadequate or if it relies on improper factors." *United States v. Bolton*, 858 F.3d 905, 915 (4th Cir. 2017). "While a district court's explanation for the sentence must support the degree of the variance, it need not find extraordinary circumstances to justify a deviation from the Guidelines." *Spencer*, 848 F.3d at 327 (cleaned up). Because our review is ultimately for an abuse of discretion, we accord "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017). Even if "we might reasonably conclude that a different sentence is appropriate, that conclusion, standing alone, is an insufficient basis to vacate the district court's chosen sentence." *Id.* (cleaned up).

We discern no abuse of discretion here. The district court cited several of the § 3553(a) factors in explaining why it chose to vary above the Guidelines range—i.e., the violent nature of the offense; Rakestraw's long criminal history which, according to the district court, was not adequately considered by the Guidelines; the need to protect the public; and the lack of a deterrent effect of previous, shorter sentences. And the facts were particularly egregious—Rakestraw carjacked a vehicle with a baby inside, led police on a high-speed chase with the baby still in the car, wrecked the car, and fled the scene of the crash without checking on the child's wellbeing. The district court considered counsel's arguments, credited some of the points he made, but ultimately found that the § 3553(a) factors called for a sentence above the Guidelines range. Accordingly, the district court did not abuse its discretion in imposing a 30-month variance.

11

III.

For the foregoing reasons, we conclude the district court did not err by failing to order a second competency evaluation and find the sentence procedurally and substantively reasonable. Therefore, we affirm the district court's judgment.

*AFFIRMED*