COURT OF APPEALS OF VIRGINIA

Present:   Judges Raphael, Lorish and Callins
Argued at Lexington, Virginia

ANTHONY TREMAINE STEWART

v.        Record No. 1363-22-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE DOMINIQUE A. CALLINS
NOVEMBER 8, 2023

FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
Christopher B. Russell, Judge

John S. Koehler (Melvin L. Hill; Law Office of James Steele, PLLC,
on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Anthony Tremaine Stewart appeals his convictions for two counts of possession with

intent to distribute a Schedule I or II substance, third or subsequent offense, two counts of

possession of a Schedule I or II substance, and one count of being a felon in possession of a

concealed weapon.  The sole issue on appeal is whether the trial court erred in determining that

Stewart was competent to stand trial.  For the following reasons, we affirm.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in

the light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  "Therefore, we will 'discard the evidence of the [defendant] in conflict with that of

the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* at 473 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

Since 2000, Stewart was evaluated numerous times for his competency to stand trial for various criminal charges prior to the present case, with varying opinions across evaluators. Several times, numerous doctors found Stewart to be incompetent due to a traumatic brain injury he suffered as a teenager, neurocognitive deficits, a history of learning disabilities, low intellectual functioning, and chronic kidney disease. However, in both November 2017 and October 2019, two different doctors who had previously determined Stewart incompetent, upon reevaluation, found him to be competent to stand trial.

In February 2019 and January 2020, Dr. Scott Bender, a neuropsychologist at the University of Virginia's Institute of Law, Psychiatry, and Public Policy, evaluated Stewart and found him incompetent to stand trial in a separate case immediately prior to the present case involving different charges. Based on Dr. Bender's reports, the trial court entered an order on November 9, 2020 finding that Stewart was unrestorably incompetent to stand trial and dismissing the charges in that case pursuant to Code § 19.2-169.3.[1]

Before that order was entered, however, Stewart was arrested in October 2020 for his current charges. The Rockbridge County grand jury later returned indictments against Stewart on two counts of possession with intent to distribute a Schedule I or II substance, third or subsequent offense, Code § 18.2-248(C); two counts of possession of a Schedule I or II substance, Code § 18.2-250; and one count of possessing a concealed weapon after having previously been convicted of a felony, Code § 18.2-308.2. The general district court entered a

---

[1] The November 9, 2020 order reflected evidence presented at a March 20, 2020 hearing before Judge Designate Malfourd Trumbo.

November 6, 2020 order to determine whether Stewart was presently competent to stand trial on these new charges.

Dr. Bender and Dr. Claire Bryson, a forensic psychology postdoctoral fellow at the University of Virginia, evaluated Stewart and submitted a report on December 15, 2020 concluding that Stewart was competent to stand trial. In reaching their conclusion, the doctors reviewed Stewart's legal, medical, and mental health records, including several prior competency and neuropsychological evaluations dating back 20 years.

In the report, Dr. Bender and Dr. Bryson observed that Stewart's overall condition had improved since his prior evaluations, reporting that "[i]n contrast to his most recent evaluations with us in 2019 and 2020, Mr. Stewart presented as much more alert, motivated, and engaged in the present evaluation." The doctors explained several possible reasons for the improvement in Stewart's condition, including "a period of abstinence from drug use, a stable diet, stable schedule and housing (due to incarceration), consistency in treatment-adherence for his medical conditions (i.e., dialysis, medications), and recovery from an exacerbation of his [end-stage renal disease] in 2018."

The doctors further observed that Stewart appeared more engaged when discussing his current legal situation, explaining that he "appeared particularly motivated to secure what he perceived to be a possible, desirable outcome in his case, and thus presented as more engaged in a discussion of his legal situation." The doctors also observed that Stewart could now "more easily be redirected to rational discussion of his legal situation" and that "on a broad, very basic level, he understands the roles of legal personnel, the purpose of legal proceedings, and the charges against him." The doctors observed that Stewart's appreciation of the legal process was "sufficiently rational with education," that Stewart "was able to discuss the alleged offenses in a realistic, detailed manner, including possible evidence," and that Stewart

"appeared capable of collaboration with his attorney." Thus, the doctors concluded that Stewart was competent to stand trial, stating: "[I]t is our opinion that Mr. Stewart displays adequate factual and rational understanding of his legal situation, is currently able to participate meaningfully in his defense, and is thereby competent to stand trial."

More than a year after submission to the court of the most recent report, on January 25, 2022, Stewart moved to dismiss the charges on the grounds that he had previously been adjudicated unrestorably incompetent to stand trial in November 2020. Stewart's motion alleged that, since having been declared unrestorably incompetent, no efforts had been made to help restore his competency, and his mental faculties remained impaired due to his traumatic brain injury. The Commonwealth opposed the motion, arguing that Stewart's latest competency evaluation, completed December 2020, established that Stewart was competent to stand trial for his current charges.

On February 14, 2022, the trial court held a hearing on Stewart's motion to dismiss. At the hearing, Stewart conceded that being "unrestorably incompetent does not mean a[n] individual can never be restored to competency" but argued that he was unrestorably incompetent "because he suffered a traumatic brain injury that cannot be alleviated by medicine or treatment," and there had been no effort to restore him to competency. The trial court denied Stewart's motion to dismiss, explaining that it had reviewed Dr. Bender and Dr. Bryson's December 2020 report and saw no reason to disturb their conclusion that Stewart was competent to stand trial. In reaching its decision, the trial court noted that Dr. Bender— who had conducted two prior competency evaluations on Stewart in the past—was a doctor "that already knows Mr. Stewart [and] who is not new to Mr. Stewart." Stewart did not seek a new competency evaluation in response to the trial court's ruling.

Stewart's case proceeded to trial, and on February 25, 2022, Stewart was found guilty by a jury on all five charges. Stewart subsequently filed post-trial motions to set aside the verdict and for a new competency evaluation, both of which were denied by the trial court.[2] The trial court entered a final sentencing order on August 15, 2022 sentencing Stewart to a total of 43 years and 12 months' imprisonment, with 22 years and 12 months suspended. This appeal followed.

ANALYSIS

Stewart argues that the trial court erred in determining that he was competent to stand trial because he had previously been found unrestorably incompetent to stand trial for prior charges due to a traumatic brain injury, substandard IQ, learning disabilities, and renal disease. Stewart emphasizes his long history of mental incompetence and asserts that he was unable to comprehend the nature of the current legal proceedings or give adequate assistance to his attorney in his defense. Stewart also notes that he had received no rehabilitative services prior to the trial court's determination that he was competent to stand trial for his current charges.

"[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Dang v. Commonwealth*, 287 Va. 132, 144 (2014) (quoting *Medina v. California*, 505 U.S. 437, 439 (1992)). A defendant's competency is fluid and can change even after a trial starts. *See* Code § 19.2-169.1(A) (providing that a competency issue can be raised "at any time after the attorney for the defendant has been retained or appointed and before the end of trial"); *see also Drope v. Missouri*, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial

---

[2] On appeal, Stewart does not assign error to the trial court's decision to deny his post-trial motion for a new competency evaluation.

- 5 -

court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial.").

In Virginia, a trial court "shall order that a competency evaluation be performed" by a mental health expert if the court "finds, upon hearing evidence or representations of counsel for the defendant or the attorney for the Commonwealth, that there is probable cause to believe that the defendant . . . lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense[.]" Code § 19.2-169.1(A).[3] Upon completion of the evaluation pursuant to Code § 19.2-169.1(B) and (C), "the evaluators shall promptly submit a report in writing to the court and the attorneys of record concerning," inter alia, "the defendant's capacity to understand the proceedings against him," "the defendant's ability to assist his attorney," and "the defendant's need for treatment in the event he is found incompetent but restorable or incompetent for the foreseeable future." Code § 19.2-169.1(D). After the trial court receives the report, "the court shall promptly determine whether the defendant is competent to stand trial" and shall conduct a competency hearing if "requested by the attorney for the Commonwealth or the attorney for the defendant, or . . . [if] the court has reasonable cause to believe the defendant will be hospitalized under § 19.2-169.2." Code § 19.2-169.1(E).

In determining whether a defendant is competent to stand trial, the trial court may consider whether the defendant has previously been found unrestorably incompetent to stand trial for prior charges, but the court is not bound by any prior finding of unrestorable incompetence. *See, e.g.*, Code § 19.2-169.1(D) ("In cases where a . . . defendant was previously determined to be unrestorably incompetent in the past two years, the [competency] report may recommend that

---

[3] "This language reflects the standard for competency articulated by the Supreme Court of the United States, which is 'whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him."'" *Dang*, 287 Va. at 145 (quoting *Godinez v. Moran*, 509 U.S. 389, 396 (1993)).

the court find the defendant unrestorably incompetent to stand trial and the court may proceed with the disposition of the case in accordance with § 19.2-169.3."); Code § 19.2-169.3(G) (providing that the Commonwealth's attorney "may bring charges that have been dismissed against [a] . . . defendant when he is restored to competency," notwithstanding any prior finding of unrestorable incompetence).

"We review a circuit court's decision [whether] . . . to order a competency evaluation . . . for abuse of discretion." *Johnson v. Commonwealth*, 53 Va. App. 79, 93 (2008). However, "[a] trial court's determination of a defendant's competency to stand trial is a question of fact and will not be reversed on appeal unless it is plainly wrong or without evidence to support it." *Grattan v. Commonwealth*, 278 Va. 602, 616-17 (2009). "We view the evidence in the light most favorable to the Commonwealth as the prevailing party on this issue in the circuit court." *Id.* at 617. "[T]he party asserting incompetency to stand trial . . . ha[s] the burden of proving such by a preponderance of the evidence." *Id.* at 616 (citing Code § 19.2-169.1(E)). Since Stewart challenges the trial court's factual finding that he was competent to stand trial, this Court's review on appeal is limited to whether the trial court's finding was plainly wrong or without evidence to support it.

Here, in determining that Stewart was competent to stand trial, the trial court relied on Dr. Bender and Dr. Bryson's December 2020 evaluation of Stewart's competency, in which the doctors concluded that Stewart was competent to stand trial. In their report, the doctors reviewed Stewart's medical history and prior competency evaluations and acknowledged that Stewart still had cognitive limitations that would require adequate support. However, the doctors observed that Stewart's condition had improved since his last evaluations and gave several possible reasons for Stewart's improvement, including a period of abstinence from drug use, stability in

- 7 -

Stewart's diet, schedule, and housing, Stewart's receipt of consistent treatment for his medical conditions, and Stewart's recovery from an exacerbation in his renal disease.

As to Stewart's ability to understand the legal proceedings against him and assist his attorney in his own defense, the doctors observed that Stewart now appeared more engaged in discussing his legal situation and that he was capable of understanding the role of legal personnel, the purpose of legal proceedings, and the legal charges against him on a broad, basic level. The doctors further observed that Stewart had a rational appreciation of the legal process, that he was able to discuss the alleged offenses against him in a detailed manner, and that he appeared to be capable of collaborating with his attorney to assist in his defense. Thus, relying on the December 2020 competency evaluation, the trial court had a sufficient evidentiary basis to conclude that Stewart was competent to stand trial.

Although Stewart was found to be unrestorably incompetent to stand trial for prior charges less than two years before the trial court's determination that Stewart was competent to stand trial for his current charges, the trial court was not bound by that prior finding of unrestorable incompetence. And in reaching its decision, the trial court was reasonably entitled to give Dr. Bender's opinion significant weight, given the fact that Dr. Bender had prior experience in evaluating Stewart's competency and—just like other doctors in 2017 and 2019— reversed his position on Stewart's competency after having previously determined that Stewart was incompetent. This reversal in Dr. Bender's position is particularly significant here, given the fact that the trial court's prior finding of unrestorable incompetence was based on Dr. Bender's previous determination that Stewart was incompetent to stand trial.

The trial court's conclusion is also supported by the fact that Stewart's motion to dismiss offered no new evidence to establish that his competency had changed since the December 2020 evaluation finding him competent to stand trial. For example, Stewart did not proffer in his

motion to dismiss that new evidence or circumstances showed that he now lacked the capacity to understand his current legal proceedings or that he was presently unable to effectively communicate with his attorney. *See Dang*, 287 Va. at 145 ("When the defendant has already been afforded a competency evaluation in which he is found competent, the circuit court need not order a second evaluation unless it is presented with a substantial change in circumstances."). The trial court was also able to rely on its interactions with Stewart during several hearings in the 14 months between the evaluation and trial. *See id.* at 150 ("Recognizing that circuit courts 'are in the best position to make competency determinations, which at bottom rely not only on a defendant's behavioral history and relevant medical opinions, but also on the [circuit] court's first-hand interactions with, and observations of, the defendant and the attorneys at bar, we appropriately afford them wide latitude.'" (alteration in original) (quoting *United States v. Bernard*, 708 F.3d 583, 593 (4th Cir. 2013))). Notably, the trial court conducted a colloquy with Stewart immediately prior to trial, during which Stewart answered all of the court's questions, indicated that he understood the court's questions, and stated that he was ready for trial.

Finally, to the extent Stewart argues that he received no services to restore his competency after having been declared unrestorably incompetent, this argument glosses over Code § 19.2-169.3(A). Under that code section, a trial court is not required to order services to restore competency, but may simply release the defendant and dismiss his charges. This is what occurred for Stewart in the immediate prior case. The fact that Stewart received no services after having been found unrestorably incompetent was a relevant factor for the trial court to consider in determining whether Stewart was now competent to stand trial, but this factor was not dispositive to the trial court's decision as a matter of law. Moreover, any argument from Stewart that the trial court failed to comply with the statute in his immediate prior case needed to be raised in that case, and not in this one.

In sum, we hold that the trial court's finding that Stewart was competent to stand trial was not plainly wrong or without evidence to support it.  Thus, the trial court did not err in denying Stewart's motion to dismiss.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*